UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARILYN HAMILTON                                                   CIVIL ACTION

VERSUS

PROMISE HEALTHCARE, INC.                              NO. 18-00102-BAJ-RLB

RULING AND ORDER

This is an employment discrimination case. Plaintiff's *pro se* Complaint[1] asserts claims of unlawful gender-based discrimination and retaliatory discharge against Defendant Promise Healthcare, Inc.[2] (*See* Doc. 1 at p. 4).

Now before the Court is **Defendant's Motion to Dismiss (Doc. 21)**, which urges the Court to dismiss Plaintiff's action because she failed to exhaust her administrative remedies and because her Complaint fails to state a claim for which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Doc. 21 at p. 1). Defendant's Motion is opposed. (Doc. 25). For the reasons stated herein, Defendant's Motion is granted.

I.   **ALLEGED FACTS**

Plaintiff is a Human Resources professional who began working for Defendant, a health care services provider, on a date not provided in the Parties' pleadings. (*See*

---

[1] Plaintiff retained Counsel on October 15, 2018 but failed to file an Amended Complaint by the February 1, 2019 deadline for amending pleadings. (Docs. 16, 20).
[2] Plaintiff identified Defendant as "Promise Healthcare, Inc.," in her Complaint. However, the correct legal name of Plaintiff's former employer is Promise Hospital of Ascension, Inc. d/b/a Promise Hospital Baton Rouge. (*See* Doc. 21-1 at p. 1 n.1). For purposes of this Ruling and Order, "Promise Healthcare, Inc." is construed as synonymous with the legal entity, "Promise Hospital of Ascension, Inc. d/b/a Promise Hospital Baton Rouge."

1

Doc. 1 at p. 6). Plaintiff's Complaint is sparse on details, but for present purposes, the following allegations are accepted as true:

In January 2017, Plaintiff notified Defendant's Regional Director of Human Resources that she was filing a complaint with the Equal Employment Opportunity Commission (EEOC) regarding Defendant's Chief Executive Officer (CEO) because he "fired or forced/ encouraged 5–7 women to resign in a 6-month period." (*See* Doc. 1 at p. 4). Despite having recently received a raise, Plaintiff was terminated several weeks later on or about February 21, 2017.[3] (*See id.*). Before firing Plaintiff, Defendant did not take progressive disciplinary action against her. (*See* Doc. 1 at p. 9). As a result of her termination, Plaintiff alleges economic damages. (*See id.*).

## II. PROCEDURAL BACKROUND

On February 10, 2017, 11 days before she was fired, Plaintiff submitted an Intake Questionnaire to the EEOC, indicating that she was pursuing claims of race- and sex-discrimination, and retaliation. (*See* Doc. 21-3 at p. 12). Plaintiff accused Defendant's CEO of "constantly" harassing her via email, making racist marks, and assassinating her character. (*See id.*). She further expressed that she believed "he [Defendant's CEO] has issues with women, particularly women of color…" (*See id.*).

Relevant here, Plaintiff's EEOC file contains two versions of her Intake Questionnaire. (*See* Doc. 21-3 at pp. 11–14, 17–20). The versions are identical except for the signature page. In what appears to be the earlier version, Plaintiff checked

---

[3] Plaintiff did not provide her termination date in her Complaint or other filings. However, on June 29, 2017, Defendant received a Notice of Charge of Discrimination that lists the last date of discrimination as February 21, 2017. (*See* Doc. 21-2).

2

"Box 2," indicating "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." (*See* Doc. 21-3 at p. 20). On the later version, however, "Box 2" *and* "Box 1" are checked, indicating *both* "I want to file a charge of discrimination ..." (Box 2), *and* "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time" (Box 1). (*See* Doc. 21-3 at p. 14). Further, above Box 1, Plaintiff wrote, "Yes," indicating that she *did not* want to file a Charge of Discrimination at that time. Above Box 2, Plaintiff wrote "No," also indicating that she *did not* want to file a Charge of Discrimination. (*See id.*). Plaintiff then initialed both inscriptions. (*See* Doc. 21-3 at p. 14). Accordingly, in the EEOC's internal log of Plaintiff's file, it says, "[Plaintiff] marked both boxes on [Intake Questionnaire] and initialed request information on [Intake Questionnaire]." (*See* Doc. 21–3 at p. 15).

The EEOC's log confirms that on February 10, 2017, Plaintiff declined to file a Charge of Discrimination but requested information on how long she could wait before filing a Charge. (*See id.*). The EEOC closed Plaintiff's inquiry that same day. (*See id.*).

According to the EEOC's internal logs, two weeks later, on February 24, 2017, Plaintiff recontacted the agency and indicated that she wanted to file a Charge of Discrimination. (*See* Doc. 21-3 at p. 23). The log then notes "Formalize charge," but a Charge of Discrimination was never created or perfected, and Plaintiff's Intake Questionnaire was not verified. (*See* Doc. 21-3 at p. 22). Nor did the EEOC investigate

3

Plaintiff's claims, contact Defendant for its position on Plaintiff's allegations, or complete other administrative efforts. The inquiry was closed again on May 28, 2017, seemingly due to inactivity. (*See id.*).

On June 8, 2017, Plaintiff contacted the EEOC again. (*See* Doc. 21-3 at p. 23). The EEOC attempted to return her call, but the agency contends that Plaintiff did not answer. (*See id.*).

On June 29, 2017, the EEOC sent to Defendant a Notice of Charge of Discrimination that stated:

> This is notice that a charge of employment discrimination has been filed against your organization under Title VII of the Civil Rights Act.
> …
> The boxes checked below apply to our handling of this charge: *No action is required by you at this time.*
> …
> Circumstances of alleged discrimination: race, sex, and retaliation.

(*See* Doc. 21-2 at p. 1) (emphasis added). Defendant did not receive a copy of Plaintiff's Intake Questionnaire or further correspondence from the EEOC. (*See* Doc. 21-1 at p. 2).

On November 2, 2017, at Plaintiff's request, the EEOC issued a Notice of Right to Sue letter. (*See* Doc. 21-3 at p. 1). Plaintiff initiated this action in this Court on February 1, 2018, alleging that Defendant engaged in gender-based discrimination and retaliatory discharge, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Doc. 1). Defendant now moves the Court to dismiss Plaintiff's action for lack of subject matter jurisdiction, arguing that Plaintiff failed to administratively exhaust her Title VII claim. Alternatively, Defendant argues that

4

Plaintiff's complaint fails to set forth an actionable claim of discrimination. (Doc. 21).

For reasons set forth below, the Court concludes that it lacks jurisdiction over Plaintiff's claims. Accordingly, the Court will not consider whether Plaintiff's Complaint also fails to state a claim upon which relief can be granted.

### III.   LEGAL STANDARD

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citations omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (*citing McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d. at 161 (*citing Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d. at 161 (*citing Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam)). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d. at 161 (*citing Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).

In Title VII cases, U.S. Court of Appeals for the Fifth Circuit precedent is split

on whether administrative exhaustion implicates the court's subject matter jurisdiction. *See Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006) ("There is disagreement in this circuit on whether a Title–VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction."). Here, because waiver and estoppel are not at issue, the Court will analyze exhaustion in jurisdictional terms. *See generally Evenson v. Sprint/United Mgmt. Co.*, No. 3:08-CV-0759-D, 2008 WL 4107524 (N.D. Tex. Aug. 21, 2008) (discussing exhaustion in jurisdictional terms for purposes of deciding a Rule 12(b)(1) motion when the result of the decision would be the same if the court considered exhaustion be a perquisite to suit.).

## IV. DISCUSSION

Title VII prohibits employer discrimination against employees based on an individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. §2000e-2(a)(1). Before filing in federal court, an aggrieved party must administratively exhaust their Title VII discrimination claim by filing a Charge of Discrimination with the EEOC. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). "The charge enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer. Only after administrative efforts terminate may the employee sue the employer in federal court." *Id.* Dismissal is appropriate where an employee has failed to exhaust their administrative remedies. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996).

on whether administrative exhaustion implicates the court's subject matter jurisdiction. *See Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006) ("There is disagreement in this circuit on whether a Title–VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction."). Here, because waiver and estoppel are not at issue, the Court will analyze exhaustion in jurisdictional terms. *See generally Evenson v. Sprint/United Mgmt. Co.*, No. 3:08-CV-0759-D, 2008 WL 4107524 (N.D. Tex. Aug. 21, 2008) (discussing exhaustion in jurisdictional terms for purposes of deciding a Rule 12(b)(1) motion when the result of the decision would be the same if the court considered exhaustion be a perquisite to suit.).

## IV. DISCUSSION

Title VII prohibits employer discrimination against employees based on an individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. §2000e-2(a)(1). Before filing in federal court, an aggrieved party must administratively exhaust their Title VII discrimination claim by filing a Charge of Discrimination with the EEOC. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). "The charge enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer. Only after administrative efforts terminate may the employee sue the employer in federal court." *Id.* Dismissal is appropriate where an employee has failed to exhaust their administrative remedies. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996).

Here, Defendant asserts that Plaintiff failed to exhaust her administrative remedies because there is no evidence that she perfected her charge with the EEOC. (*See* Doc. 21-1 at p. 2). Defendant explains that "despite Plaintiff allegedly filing a charge with the EEOC, [it] never received a charge." (*See id.*). Plaintiff does not dispute that she failed to file a formal Charge of Discrimination. (*See* Doc. 25 at p. 1). However, she argues that pursuant to *Price v. Southwestern Bel Telephone Co.*, an "unverified [Intake] questionnaire can suffice as a charge." (*See id.*) (*citing* 687 F.2d 74 (5th Cir. 1982)).

In *Price*, the Fifth Circuit "treated a plaintiff's unverified, EEOC intake questionnaire as a Title VII charge of discrimination for the purpose of satisfying the time limitation for filing a charge." *Evenson*, 2008 WL 4107524 at *5. However, *Price* is distinguishable from Plaintiff's case. Unlike Plaintiff, Price ultimately filed a formal Charge of Discrimination, and her Intake Questionnaire was only considered a charge for purposes of satisfying Title VII's timing requirement, *not* for purposes of satisfying the filing requirement altogether. *See Price*, 687 F.2d at 76–77. Here, Plaintiff has all but conceded that she failed file a formal Charge of Discrimination with the EEOC. Instead, she urges the Court to consider her *unverified* Intake Questionnaire as sufficient to satisfy the charge requirement *in toto*. (*See* Doc. 25 at p. 2). But Plaintiff has failed to identify cases that considered an unverified Intake Questionnaire, on its own, as satisfying the charge requirement. Moreover, section 2000(e)(5)(b) of Title VII requires that "charges shall be in writing *under oath or affirmation*," and the EEOC's Title VII regulations also require that a charge be

7

"verified." 29 C.F.R. § 1601.9 (2007). Accordingly, because Plaintiff's Intake Questionnaire remained unverified, and was not supplemented by a verified Charge of Discrimination, it cannot on its own satisfy Title VII's filing requirement.

Plaintiff also argues that pursuant to *Harris v. David McDonald Honda*, because the EEOC sent Defendant a Notice of Charge of Discrimination, her Intake Questionnaire should be deemed to have satisfied the charge requirement. (*See* Doc. 25 at p. 2) (*citing* 213 Fed. Appx. 258 (5th Cir. 2006)). However, as in *Price*, the employee in *Harris* ultimately filed a Charge of Discrimination, and his Intake Questionnaire was only considered for purposes of determining *which* of the employee's factual allegations were properly before the Court. *See Harris*, 213 Fed. Appx. at 261.

Ultimately, Plaintiff contends that her Intake Questionnaire is properly considered a charge if she can offer proof that the EEOC considered it as "sufficient to satisfy the charge requirements or 'otherwise set the administrative machinery in motion.'" (*See* Doc. 25 at p. 2) (*citing Price*, 687 F.2d at 78). Citing *Price*, Plaintiff argues that the issuance of the Notice of Charge of Discrimination to Defendant and her receipt of the Right to Sue letter constitute this proof. (*See id.*). But as previously noted, there is a critical difference between the facts in *Price* and the facts *sub judice*.

Moreover, the *Price* court considered the agency's treatment of the aggrieved party's unverified complaint as *relevant*, but not *dispositive*, "to the determination [of] whether… [the unverified complaint] constituted a charge within the meaning of the statute and pertinent regulations." *Price*, 687 F.2d at 78–79.

Finally, the lack of investigatory or reconciliatory efforts by the EEOC in Plaintiff's case bely a finding that Plaintiff's Intake Questionnaire "set the administrative machinery in motion." *See Pacheo*, 448 F.3d at 788–89 ("[A] primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, [a] less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance.") (internal citations omitted). Thus, the Court concludes that Plaintiff failed to exhaust her administrative remedies, depriving the Court of subject matter jurisdiction in this action.

## V.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion to Dismiss (Doc. 21)** be and is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's action be and is hereby **DISMISSED** for failure to exhaust her administrative remedies.

Judgement shall issue separately.

Baton Rouge, Louisiana, this 27th day of March, 2023

JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA